UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DRAKES BAY OYSTER COMPANY, *et al.*, <br><br> Plaintiffs, <br><br> vs. <br><br> KENNETH L. SALAZAR, in his official capacity as Secretary, U.S. Department of the Interior, *et al.*, <br><br> Defendants. | Case No.: 12-cv-06134-YGR <br><br> **ORDER DENYING MOTION TO INTERVENE (DKT. NO. 11); AND DENYING PLAINTIFFS' ADMINISTRATIVE MOTION TO STRIKE (DKT. NO. 83)** |

Plaintiffs Drakes Bay Oyster Company (the "Company") and Kevin Lunny ("Lunny" and collectively, "Plaintiffs") initiated this action requesting that the Court declare void and unlawful the November 29, 2012 Memorandum of Decision of Defendant Kenneth L. Salazar, Secretary of the U.S. Department of the Interior ("Secretary"), in which he decided not to grant Plaintiffs a permit to allow for the continued operation of their oyster farm ("Decision"). Plaintiffs ask the Court to order the Secretary to direct the National Park Service ("Park Service") to issue the Company the 10-year special use permit which the Secretary denied in the November 29, 2012 Decision. Plaintiffs have also moved for a preliminary injunction preventing enforcement of the Secretary's Decision, which would allow them to continue operating their oyster farm until the Court decides the merits of the lawsuit.

Environmental Action Committee of West Marin, National Parks Conservation Association, Natural Resources Defense Council, and Save Our Seashore (collectively, "Proposed Intervenors") have filed a Motion to Intervene ("Motion") in this action as Defendants on the ground that they are entitled to intervene as of right. (Dkt. No. 11-1.) Proposed Intervenors argue that they are entitled to intervene because they have been deeply involved in the Defendant U.S. Department of the Interior's

process to inform the Secretary's Decision, and this lawsuit not only threatens to undermine their successful efforts, but intervention will ensure that their longstanding interests are represented and protected. Alternatively, they ask the Court to grant permissive intervention.

Plaintiffs filed an Opposition to Environmental Action Committee of West Marin, *et al.*'s Motion to Intervene ("Opposition"). (Dkt. No. 41.) Defendants filed a Statement of Non-Opposition to Motion to Intervene. (Dkt. No. 53.) Proposed Intervenors thereafter filed their Reply in Support of Motion to Intervene ("Reply"). (Dkt. No. 56.)

Having carefully considered the papers submitted and the pleadings in this action,[1] and for the reasons set forth below, the Court hereby **DENIES** the Motion to Intervene, but **GRANTS** Proposed Intervenors the ability to seek leave to participate as amicus curiae in this action as set forth herein.

**I.   BACKGROUND[2]**

In 1962, Congress created the Point Reyes National Seashore ("Seashore"), and placed it under the administrative authority of the Secretary of the Interior. Pub. L. No. 87-657, 76 Stat. 538, (codified at 16 U.S.C. §§ 459c *et. seq.*) (1962). Two years later, Congress passed the Wilderness Act, which directed the Secretary of the Interior to identify the suitability of certain national park acreage for wilderness designation. 16 U.S.C. § 1132(c). Then, in 1976, Congress enacted the Point Reyes Wilderness Act, designating particular acres of the Seashore as potential wilderness. Pub. L. No. 94-544, 90 Stat. 2515 (1976). Drakes Estero is located within the Seashore.

Plaintiff Kevin Lunny and his wife Nancy Lunny currently own the Company, which is located on the shore of Drakes Estero. (First Amended Complaint for Declaratory and Injunctive Relief (Dkt. No. 44) ("FAC") ¶ 2.) In December 2004, the Company, Kevin Lunny, and Nancy Lunny purchased their oyster farm from the Johnson Oyster Company. (FAC ¶ 3.) At the time of the purchase, Johnson Oyster Company operated the oyster farm pursuant to a 40-year Reservation of Use and Occupancy ("Reservation") with the Park Service for 1.5 acres of land on the Drakes Estero

---

[1] The Court previously found the pending Motion to be appropriate for decision without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b) and vacated the hearing scheduled for January 15, 2013. (Dkt. No. 78.)

[2] This background section is intended to summarize pertinent facts and allegations relevant to the pending Motion, and is not intended to provide an exhaustive summary of the factual or procedural background in this action.

shore. (*Id.*) Johnson Oyster Company had previously granted, in 1972, fee title of the 1.5 acres of shore to the United States, subject to the Reservation. (*Id.* ¶ 39.) The Reservation had an expiration date of November 30, 2012, but allowed for the potential issuance of a special use permit upon the expiration date. (*Id.* ¶¶ 3 & 39.)

In 2009, Congress enacted Section 124 of the Department of the Interior, Environment, and Related Agencies Appropriations Act of 2010. Pub. L. No. 111-88 § 124, 123 Stat. 2904, 2932 (2009) ("Section 124"). Section 124 provided, in part: "Prior to the expiration on November 30, 2012 of the Drake's Bay Oyster Company's Reservation of Use and Occupancy and associated special use permit ('existing authorization') within Drake's Estero at Point Reyes National Seashore, notwithstanding any other provision of law, the Secretary of the Interior is authorized to issue a special use permit with the same terms and conditions as the existing authorization, except as provided herein, for a period of 10 years from November 30, 2012." Plaintiffs applied for the special use permit from the Park Service in July 2010 ("New SUP"). (FAC ¶ 47.) In response to Plaintiffs' application, the Park Service prepared a Draft Environmental Impact Statement in 2011 and a Final Environmental Impact Statement in 2012. (*Id.* ¶¶ 57 & 97.)

On November 29, 2012, Secretary Salazar issued a Memorandum of Decision stating that the Company would not be issued a New SUP. (FAC ¶¶ 11, 14.) The Secretary stated that he was effecting the intent of Congress, as stated in the 1976 Point Reyes Wilderness Act, to designate Drakes Estero as wilderness. (*Id.* ¶¶ 130–132.) The Decision instructed the Park Service to publish a notice in the Federal Register of the conversion of Drakes Estero from potential to designated wilderness, and instructed the Company to remove personal property within 90 days and to cease commercial activities in Drakes Estero after November 30, 2012. (*Id.* ¶ 14.)

## II.  LEGAL STANDARD

Intervention is a procedure by which a nonparty can gain party status without the consent of the original parties. *United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 933 (2009) ("intervention is the requisite method for a nonparty to become a party to a lawsuit"). There are two types of intervention: intervention of right and permissive intervention. Intervention exists as a matter of right when a federal statute confers the right to intervene or the applicant has a legally

protected interest that may be impaired by disposition of the pending action and that interest is not adequately represented by existing parties. Fed. R. Civ. P. 24(a). Permissive intervention may be allowed at a court's discretion when a federal statute confers a conditional right to intervene, or the applicant's claim or defense and the main action share a common question of law or fact. Fed. R. Civ. P. 24(b).

## III.  DISCUSSION

Proposed Intervenors seek to intervene, both as a matter of right and permissively under subsections (a) and (b) of Federal Rule of Civil Procedure 24. Plaintiffs oppose intervention. Defendants "have no objection" to the Motion. (Dkt. No. 53.)

### A.  INTERVENTION OF RIGHT

Courts in the Ninth Circuit apply a four-part test to determine whether intervention should be granted as a matter of right: (1) the applicant must assert a "significantly protectable" interest relating to the property or transaction that is the subject of the action; (2) the applicant's interest must be inadequately represented by the parties to the action; (3) disposition of the action without intervention may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's motion must be timely. *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998); *Cabazon Band of Mission Indians v. Wilson,* 124 F.3d 1050, 1061 (9th Cir. 1997). The applicant bears the burden of establishing *all* of the criteria, and the rule is construed "broadly, in favor of the applicant for intervention." *Donnelly*, 159 F.3d at 409. Failure to satisfy any one of the requirements is fatal to the application, and a court need not reach the remaining elements if one of the elements is not satisfied. *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 950 (9th Cir. 2009).

The Court notes that while Plaintiffs generally contend that Proposed Intervenors cannot meet their burden of establishing the requirements for intervention as of right (Opp. at 1), their substantive response is directed only to the adequacy of representation element (*id.* at 5–12). The Court will nonetheless address each element.

#### 1.  First Element: "Significantly Protectable" Interest

To determine whether an applicant has a "significantly protectable" interest necessary for intervention, the Court must consider: (i) whether the interest is protectable under some law; and

4

(ii) whether there is a relationship between the legally protected interest and the claims at issue. *Wilderness Soc. v. U.S. Forest Service*, 630 F.3d 1173, 1179 (9th Cir. 2011). A would-be intervenor must demonstrate generally it "has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation." *California ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006). "Although the intervenor cannot rely on an interest that is wholly remote and speculative, the intervention may be based on an interest that is contingent upon the outcome of the litigation." *City of Emeryville v. Robinson*, 621 F.3d 1251, 1259 (9th Cir. 2010) (quoting *United States v. Union Elec. Co.*, 64 F.3d 1152, 1162 (8th Cir. 1995)); *see also United States v. Aerojet General Corp.*, 606 F.3d 1142, 1150 (9th Cir. 2010).

In the environmental law context, the Ninth Circuit has identified at least two factors that weigh in favor of finding that a "significantly protectable interest" exists: (1) a group has an interest in seeing a wilderness area preserved for the use and enjoyment of its members, or (2) the group actively participates in the administrative process leading to the litigation. *See e.g. Wilderness Soc.*, 630 F.3d at 1180; *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 897–98 (9th Cir. 2011); *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 526–27 (9th Cir. 1983). In *Citizens for Balanced Use*, proposed intervenors' interest was the ability to conserve and enjoy wilderness in the study area. The Court held such interest would be practically impaired as a result of the litigation. 647 F.3d at 898.[3]

Proposed Intervenors are "public interest environmental organizations . . . that have worked for years to protect the natural resources of [the Seashore] and Drakes Estero." (Mot. at 5.) They claim an interest in Drakes Estero's ecological, biological, scientific, scenic, recreational, and aesthetic resources. (Mot. at 6.) Specifically, their members, staff, and officers regularly visit Drakes Estero for hiking, kayaking, wildlife observation, beachcombing, nature education, and other quiet-use activities. (*Id.* at 5; Declaration of Gordon Bennett in Support of Motion to Intervene ("Bennett Decl.") ¶¶ 3, 7; Declaration of Neal Desai in Support of Motion to Intervene ("Desai Decl.") ¶¶ 3, 7; Declaration of Amy Elizabeth Trainer in Support of Motion to Intervene ("Trainer Decl.") ¶¶ 3, 8;

---

[3] *See also Sagebrush Rebellion*, 713 F.2d at 526–27 (intervenor-group devoted to the protection of birds and other animals had actively participated in administrative process leading to the litigation, and therefore had significantly protectable interest).

5

Declaration of Johanna Wald in Support of Motion to Intervene ("Wald Decl.") ¶¶ 3, 7 (*see* Dkt. Nos. 11 & 12).) Proposed Intervenors assert their interests are protectable under four "environmental, land management, and procedural statutes": (1) the Wilderness Act of 1964 and the Point Reyes Wilderness Act of 1976; (2) National Park Service Management Policies; (3) the National Environmental Policy Act; and (4) the Administrative Procedure Act. (Mot. at 6–7.)

Plaintiffs' Opposition does not address this factor substantively. The Court finds that Proposed Intervenors have established a significantly protectable interest under Fed. R. Civ. P. 24(a). Proposed Intervenors have established they have an interest in seeing Drakes Estero preserved for the use and enjoyment of its members. As noted above, a proposed intervenor could generally demonstrate a sufficient interest for intervention as of right in a NEPA action, as in all cases, if "it will suffer a practical impairment of its interests as a result of the pending litigation." *Wilderness Soc.,* 630 F.3d at 1179 (citing *California ex rel. Lockyer,* 450 F.3d at 441). In addition, Proposed Intervenors in this case have participated in the administrative process leading to this litigation. (*See* Bennett Decl. ¶ 6; Desai Decl. ¶ 6; Trainer Decl. ¶ 6; Wald Decl. ¶ 6.) They have also been involved in a field survey at and near Drakes Estero to document alleged environmental damage caused by Drakes Bay Oyster Company's operations. (*See* Bennett Decl. ¶¶ 7, 9.)

According to Proposed Intervenors, the relief sought by Plaintiffs "would result in undoing all of Proposed Intervenors' efforts to ensure that no further permit for oyster cultivation in Drakes Estero be granted after the existing reservation of use and occupancy ended[.] . . . Granting the relief that plaintiffs seek would directly harm [their] interest in the Estero receiving [a] wilderness designation and protection . . . and thus, in their use and enjoyment of the Estero." (Mot. at 8.) The Court agrees that Proposed Intervenors' interests, as identified in this Motion, are sufficiently related to the claims at issue in this action.

**2.    Second Element: Adequate Representation by Existing Parties**

The parties contest the adequacy of representation element. The Court considers three factors: (1) whether the interest of the present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the

proceeding that other parties would neglect. *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003) (citing *California v. Tahoe Reg'l Planning Agency*, 792 F.2d 775, 778 (9th Cir. 1986)). "The 'most important factor' to determine whether a proposed intervenor is adequately represented by a present party to the action is 'how the [intervenor's] interest compares with the interests of existing parties.'" *Perry,* 587 F.3d at 950–51 (quoting *Arakaki,* 324 F.3d at 1086 (internal citations omitted)). Generally, the burden on the would-be intervenor is minimal as it merely needs to show that representation of the interest by existing parties *may* be inadequate. *Arakaki*, 324 F.3d at 1086 (citing *Trbovich v. United Mine Workers,* 404 U.S. 528, 538 n. 10 (1972)). However, "[w]here the party and the proposed intervenor share the same 'ultimate objective,' a presumption of adequacy of representation applies, and the intervenor can rebut that presumption only with a 'compelling showing' to the contrary." *Perry*, 587 F.3d at 951 (quoting *Arakaki*, 324 F.3d at 1086). Similarly, there is an assumption of adequacy when the government is acting on behalf of a constituency that it represents because it is presumed that the government adequately represents its citizens when the applicant shares the same interest. *Arakaki*, 324 F.3d at 1086 (citing *United States v. City of Los Angeles* ("*City of Los Angeles*"), 288 F.3d 391, 401 (9th Cir. 2002)); *Gonzalez v. Arizona*, 485 F.3d 1041, 1052 (9th Cir. 2007).

Proposed Intervenors argue that the existing parties do not adequately represent their interests. Proposed Intervenors' interests are in direct conflict with Plaintiffs. (Mot. at 10.) As to existing Defendants, Proposed Intervenors contend that their interests are inadequately represented because the United States is likely to abandon or concede a potentially meritorious argument or interpretation of a statute. (Mot. at 10; Reply at 3.) Stating that it is not their burden to anticipate the specific differences between themselves and Defendants, Proposed Intervenors argue they have met their burden by simply showing it is likely that Defendants will not advance the same arguments as they would. (Mot. at 11 (citing *Southwest Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 824 (9th Cir. 2001)).)

As to the specific differences in arguments that are likely to result, Proposed Intervenors identify: (i) their "unique environmental perspective" which is not represented by any other party; and (ii) the fact that Defendants have not acted "as expeditiously as they could have," to the detriment of

7

ecological health and restoration of the Estero "in the short term."  Proposed Intervenors also suspect that Defendants may "temper their legal positions against [P]laintiffs . . . because they must work with them during the 90-day transition period (and perhaps beyond that time on certain post-closure issues)" and/or may be more persuaded by the broader public interest in making strategic decisions in this litigation.  (Mot. at 11; Reply at 4 ("Proposed Intervenors would have presented different arguments regarding the legal requirements governing [the Company's] operations and set stricter standards for the removal of commercial operations at the site to protect the ecological health of the Estero and allow for its restoration as quickly as possible.").)

Plaintiffs disagree and assert that Defendants and Proposed Intervenors have the same ultimate objective of removing the Company's operations from Drakes Estero, and thus a presumption of adequacy of representation applies that Proposed Intervenors have failed to rebut.  (Opp. at 6.)  Plaintiffs characterize Defendants and Proposed Intervenors as taking positions that are "near-identical" or "closely echo" each other, and describe Defendants as having zealously pursued the Company's removal such that full wilderness can be achieved in Drakes Estero.  (*Id.* at 2–3 & 8.)  In addition, Plaintiffs argue that Defendants have demonstrated a willingness to make the same arguments and statutory constructions as Proposed Intervenors.  (*Id.* at 11.)  To the extent that Proposed Intervenors attempt to argue that Defendants are likely to and/or have already abandoned potentially meritorious arguments that Proposed Intervenors would have made, Plaintiffs respond that inadequacy is not established where the intervenor seeks to offer a variation on an argument or would follow a different litigation strategy.  (*Id.* at 10–11.)  Finally, Plaintiffs argue that Proposed Intervenors will not offer any elements *necessary* to this matter that Defendants would otherwise neglect.  (*Id.* at 11–12.)

The Court agrees with Plaintiffs.  Proposed Intervenors and Defendants share the same ultimate objective here: the timely removal of the Company's operations from Drakes Estero and protection of Drakes Estero as wilderness.[4]  As such, a compelling showing is required to rebut the presumption.  *Perry*, 587 F.3d at 951.  Proposed Intervenors have failed to meet this standard for four reasons.

---

[4] In recognizing that a presumption of adequacy of representation applies here, Proposed Intervenors seem to concede that Defendants' and Proposed Intervenors' ultimate objective is the same.  (Reply at 2.)

8

*First*, Proposed Intervenors primarily object to the speed at which Defendants are moving, not to the substantive arguments that they are likely to make in this litigation. Proposed Intervenors argue that Defendants have not acted "as expeditiously as they could have" by permitting an additional 90-day period to wind down the Company's operations after the date of the Secretary's Decision. (Mot. at 11; Reply at 7.) Proposed Intervenors also object to a December 14, 2012 Stipulation (Dkt. No. 29), in which the Secretary agreed that the Company could conduct certain activities as part of the wind-down of business and permitted an additional fifteen days so that Plaintiffs could remove all personal property from the area. (*See* Dkt. No. 31 (Order Granting Stipulation).) Proposed Intervenors "do not believe that such [extensions] are consistent with the Wilderness Act" and that "immediate cessation" of the Company's operations is proper. (Reply at 8.) This same rationale appears to underlie Proposed Intervenors' argument that Defendants may "temper" its position with Plaintiffs because the parties will need to coordinate transition and closure issues. Such *potential* tempering, at this juncture, is speculative and not sufficient to rebut the presumption of adequacy.

*Second*, Defendants share interests with Proposed Intervenors such that Defendants are likely to make all of the substantive arguments that Proposed Intervenors would make. Defendants seek to remove Plaintiffs from Drakes Estero to allow for the designation of Drakes Estero as full wilderness and, consequently, Defendants have denied Plaintiffs' request for a New SUP that would have permitted the Company to remain. Defendants' ultimate objective of removing Plaintiffs from Drakes Estero and the underlying rationale to protect wilderness correspond directly to the interest of Proposed Intervenors. While Proposed Intervenors may have a *more personal* interest, in that their members actually enjoy various recreational and aesthetic uses of Drakes Estero and may suffer "direct harm" from the Company's continued operation (Mot. at 12; Reply at 3, 8), their primary asserted interest remains the protection of Drakes Estero as wilderness.[5] At best, Proposed

---

[5] The Ninth Circuit has stated that inadequate representation is more likely to be found when the intervenor-applicant asserts a personal interest that does not belong to the public at large, and that government agencies may be required to represent a broader view of the public interest than the more narrow, parochial or economic interests of private parties. *Forest Conservation Council v. U.S. Forest Service*, 66 F.3d 1489, 1499 (9th Cir. 1995). However, numerous cases post-dating *Forest Conservation* finding inadequacy based on intervenor-applicants' narrower personal interest are distinguishable. *Southwest Ctr. for Biological Diversity*, 268 F.3d at 823 (City defendant acknowledged that it would not represent proposed intervenors' interests and government defendants generally could not be expected to protect private, for-profit motive interests under the circumstances); *California ex rel. Lockyer*, 450 F.3d at 444–45 (making compelling showing of inadequacy

Intervenors will offer an additional "environmental perspective" to the elements—it is not that Defendants will abandon such argument merely because Defendants themselves do not personally enjoy uses of the area.  (*See* Reply at 4 ("Proposed Intervenors have sought to protect their particularized interests by taking steps *above and beyond* what Defendants have required") (emphasis supplied).)

*Third*, Proposed Intervenors have failed to establish that the personal perspective or differing expertise that they bring to this action is necessary to the elements of the proceedings.  To the contrary, Proposed Intervenors will only bring a different "point of view."  (Reply at 9.)  Proposed Intervenors have not identified how Defendants' representation would be deficient, in and of itself, to protect their interest in having the Company removed and protecting wilderness areas.

*Fourth*, to the extent that Proposed Intervenors have identified any "difference" in argument that Defendants did or will not make in this action, the Court finds these differences are best characterized as either a "dispute over litigation strategy or tactics" or a "minor difference[] in opinion," similar to the differing strategy calls in *Perry*.  587 F.3d at 954 (citing *City of Los Angeles*, 288 F.3d at 402–03 and *Northwest Forest Res. Council v. Glickman*, 82 F.3d 825, 838 (9th Cir. 1996)).  Differences in strategic approaches or claims that the existing party "may not defend . . . in the exact manner that [intervenor-applicants] would" are insufficient to show that the existing party has conceded *necessary* elements to the proceeding.  *Perry*, 587 F.3d at 954 (addressing various stipulations on evidence that intervenor-applicants argued they would not have agreed to).

For the foregoing reasons, the Court finds that Plaintiffs have failed to rebut the presumption that Defendants will adequately represent Proposed Intervenors' interests in this action.

### 3. Third Element: Effect on Proposed Intervenors' Ability to Protect Their Interests

The next element examines whether disposition of the action without intervention may as a practical matter impair or impede its ability to protect that interest.  *Donnelly*, 159 F.3d at 409.

---

where there was evidence that the government "will take a position that actually compromises (and potentially eviscerates)" the protections sought by intervenor-applicants); *Citizens for Balanced Use*, 647 F.3d at 899–900 (overcoming presumption of adequacy where, among other things, there were "fundamentally differing points of view between Applicants and the Forest Service on the litigation as a whole").  Here, Proposed Intervenors are public interest environmental organizations seeking to protect the natural resources of Drakes Estero and Proposed Intervenors have failed to show that Defendants have fundamentally differing interests.

Proposed Intervenors assert that the relief sought by Plaintiffs would have a "significant adverse impact" on their work to defend and preserve the extraordinary natural resources of Drakes Estero. (Mot. at 9; *see* Bennett Decl. ¶¶ 4–6; Desai Decl. ¶¶ 5–6; Trainer Decl. ¶¶ 5–6; Wald Decl. ¶¶5–6.) It would also harm their ability to use and enjoy the area. (Mot. at 9; *see* Bennett Decl. ¶ 10; Desai Decl. ¶ 10; Trainer Decl. ¶ 9; Wald Decl. ¶ 10.)

The Court has, as explained above, found that Defendants adequately represent Proposed Intervenors' interests, and thus Proposed Intervenors cannot satisfy each of the requirements for intervention as of right, which is fatal to the request. *Perry*, 587 F.3d at 950. However, the Court does not believe that Proposed Intervenors' ability to protect their interests would be practically impaired if they do not intervene.

### 4. Fourth Element: Timeliness

The Court notes that the Motion to Intervene was filed less than one week after the initial complaint was filed and would thus be considered timely.

Based on the foregoing analysis (Section III.A.1–4), Proposed Intervenors' Motion to Intervene as a matter of right is hereby **DENIED**.

### B. PERMISSIVE INTERVENTION

The Court considers three factors in determining whether to allow permissive intervention pursuant to Rule 24(b)(2): (1) the applicant's claim or defense must share a common question of law or fact with the main action; (2) there must be independent grounds for jurisdiction over the claim or defense; and (3) timeliness. *League of United Latin American Citizens v. Wilson*, 131 F.3d 1297, 1308 (9th Cir. 1997); Fed. R. Civ. P. 24(b). Even where all the prerequisites are met, a district court has considerable discretion in ruling on the motion for permissive intervention. *In re Benny*, 791 F.2d 712, 721–22 (9th Cir. 1986). "In exercising its discretion the court shall consider whether intervention will unduly delay or prejudice the adjudication of the rights of the original parties." Fed. R. Civ. P. 24(b).

Based on their interest in "eliminating commercial shellfish production in Drakes Estero and its protection as wilderness," Proposed Intervenors alternatively seek permissive intervention if the Court does not grant intervention as of right. (Mot. at 12–13.) As argued above, they assert their

"expertise in the science and policy regarding Drakes Estero and its resources could contribute to resolution of this case." (*Id.* at 13.)

In response, Plaintiffs do not substantively dispute that Proposed Intervenors meet the requirements under Fed. R. Civ. P. 24(b). (*See* Opp. at 13 ("even if Applicants could meet Rule 24(b)'s threshold . . . ").) Instead, Plaintiffs argue prejudice and request that the Court exercise its discretion and deny intervention. Plaintiffs contend that Proposed Intervenors will prolong litigation and inject "highly prejudicial speculation" into the litigation, as evidenced in the declarations submitted in support of the Motion that contain legal conclusions and argument "threaten[ing] to prejudice and derail the proceedings." (Opp. at 12–14.)

The Court finds that while the Proposed Intervenors may have a unique point of view and expertise, intervention as a party will not necessarily facilitate resolution on the merits, but is likely to result in duplicative briefing adding a layer of unwarranted procedural complexity. For example, Proposed Intervenors filed a proposed opposition to the pending motion for preliminary injunction ("Proposed Intervenors' Opposition"). (Dkt. No. 62.) The Court observes that Proposed Intervenors' Opposition very closely tracks Defendants' arguments, adding few substantive arguments directly on point.[6] In light of the aligned interests and the duplication already shown, the Court finds that the benefits of proposed intervention are outweighed by the efficient resolution of the pending dispute. Moreover, the Court can permit briefing by the Proposed Intervenors on discrete issues of concern where their unique perspective would contribute productively to the discussion.

As set forth above, the Court **DECLINES TO GRANT** permissive intervention, but **GRANTS** Proposed Intervenors leave to request permission to file an amicus brief on specific issues in this litigation. Such requests for leave must identify the discrete topics that Proposed Intervenors seek to address and must be promptly made, such that the Court can adjust briefing schedules as necessary.

---

[6] The Court notes that Plaintiffs have filed an Administrative Motion to Strike Proposed Intervenors' Opposition Brief, or, in the Alternative, for Leave to File Response. (Dkt. No. 83.) Plaintiffs argue that this opposition brief was unauthorized, as the Court had not yet ruled on the Motion to Intervene. In addition, Proposed Intervenors did not seek leave of Court for such filing. The Court agrees that Proposed Intervenors should have sought leave of court prior to filing their proposed opposition. However, in light of the Court's review of the brief to assess Proposed Intervenors' request to intervene, the Court **DECLINES** to strike Proposed Intervenors' opposition and treats it as if it had been filed as an amicus brief. Accordingly, the Court **GRANTS** Plaintiffs' request to file their reply thereto (Dkt. No. 83-1).

**IV.   CONCLUSION**

For the reasons stated above, the Motion to Intervene is **DENIED**.  This Order terminates Dkt. Nos. 11 & 83.

**IT IS SO ORDERED.**

Dated:  February 4, 2013

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**