Amber D. Abbasi [CSBN 240956]
**CAUSE OF ACTION**
1919 Pennsylvania Ave. NW, Suite 650
Washington, D.C. 20006
Phone: 202.499.4232
Fax: 202.300.5842
E-mail: amber.abbasi@causeofaction.org

S. Wayne Rosenbaum [CSBN 182456]
Ryan Waterman [CSBN 229485]
**STOEL RIVES LLP**
12255 El Camino Real, Suite 100
San Diego, CA  92130
Phone:  858.794.4100
Fax:  858.794.4101
Email:  swrosenbaum@stoel.com; rrwaterman@stoel.com

*Counsel list continues on next page*

Attorneys for Plaintiffs DRAKES BAY OYSTER COMPANY and KEVIN LUNNY

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| **DRAKES BAY OYSTER COMPANY,** 17171 Sir Francis Drake Blvd Inverness, CA 94937, and  **KEVIN LUNNY**, 17171 Sir Francis Drake Blvd Inverness, CA 94937  Plaintiffs,  v.  **KENNETH L. SALAZAR**, in his official capacity as Secretary, U.S. Department of the Interior, 1849 C Street, NW, Washington, D.C., 20240; **U.S. DEPARTMENT OF THE INTERIOR** 1849 C Street, NW, Washington, D.C., 20240; **U.S. NATIONAL PARK  SERVICE** 1849 C Street, NW, Washington, D.C. 20240; and **JONATHAN JARVIS**, in his official capacity as Director, U.S. National Park Service, 1849 C Street, NW, Washington, D.C. 20240.  Defendants. | Case No. 12-cv-06134-YGR  **MOTION TO EXPEDITE RULING AND NOTICE OF MOTION AND MOTION FOR INJUNCTION PENDING APPEAL** |

**Counsel List Continued**

John Briscoe [CSBN 53223]
Lawrence S. Bazel [CSBN 114641]
Peter S. Prows [CSBN 257819]
**BRISCOE IVESTER & BAZEL LLP**
155 Sansome Street, Suite 700
San Francisco, CA 94104
Phone: 415.402.2700
Fax: 415.398.5630
E-mail: jbriscoe@briscoelaw.net; lbazel@briscoelaw.net; pprows@briscoelaw.net


Zachary Walton [CSBN 181041]
**SSL LAW FIRM LLP**
575 Market Street, Suite 2700
San Francisco, CA 94105
Phone:  415.243.2685
Email: zack@ssllawfirm.com

**NOTICE OF MOTION AND MOTION**

TO EACH PARTY AND TO THE ATTORNEY OF RECORD FOR EACH PARTY IN THIS ACTION:

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. § 1657(a), Fed. R. Civ. Proc. 62(c), and Civil L.R. 6-3, Plaintiffs Drakes Bay Oyster Company (DBOC) and Mr. Kevin Lunny will and hereby do move for an expedited ruling on the present motion for an injunction pending appeal in this action, to be issued by the close of business on February 11, 2013.

Plaintiffs respectfully request that this Court issue an injunction pending appeal enjoining named defendants, their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them, from enforcing or otherwise implementing Secretary Salazar's November 29, 2012, Memorandum of Decision, the National Park Service's November 29, 2012 Directive, and the December 4, 2012, Federal Register Notice (77 Fed. Reg. 71826, 71827), and from interfering with the continuing operations of Plaintiffs' oyster farm, pending adjudication of Plaintiffs' interlocutory appeal of this Court's Order denying Plaintiffs' Motion for a Preliminary Injunction.

The grounds for this motion are that: (i) good cause exists for an expedited ruling so that, if this motion is denied, Plaintiffs have sufficient time before February 28, 2013 to bring an emergency motion for an injunction pending appeal before the Ninth Circuit, (ii) Plaintiffs are likely to prevail on the merits of their appeal of the District Court's February 4, 2013, Order denying Plaintiffs' Motion for a Preliminary Injunction; (iii) in the absence of preliminary injunctive relief, Plaintiffs are likely to suffer irreparable harm caused by the destruction of their business; (ivii) the balance of equities tips sharply in Plaintiffs' favor; and (iv) an injunction is in the public interest to prevent irreparable harm to Plaintiffs, DBOC's employees and their families, to the environment, and to the public.

Plaintiffs' Motion for an Expedited Ruling on their Motion For Injunction Pending Appeal is based on the following Memorandum of Points and Authorities in Support of Motion for an Expedited Ruling on their Motion For Injunction Pending Appeal; the Declaration of Peter Prows;

1 the complete records and files in this action; any arguments and evidence to be presented on a
2 hearing on this motion; and such other and further matters as the Court may properly consider.

DATED: February 7, 2013                         Respectfully submitted,

                                                CAUSE OF ACTION


                                                By: /s/ Amber Abbasi
                                                    AMBER ABBASI
                                                    Attorneys for Plaintiffs


DATED:  February 7, 2013


                                                BRISCOE IVESTER & BAZEL LLP


                                                By: /s/ Peter Prows
                                                    PETER PROWS
                                                    Attorneys for Plaintiffs

Amber D. Abbasi [CSBN 240956]
**CAUSE OF ACTION**
1919 Pennsylvania Ave. NW, Suite 650
Washington, D.C. 20006
Phone: 202.499.4232
Fax: 202.300.5842
E-mail: amber.abbasi@causeofaction.org

S. Wayne Rosenbaum [CSBN 182456]
Ryan Waterman [CSBN 229485]
**STOEL RIVES LLP**
12255 El Camino Real, Suite 100
San Diego, CA  92130
Phone:  858.794.4100
Fax:  858.794.4101
Email:  swrosenbaum@stoel.com; rrwaterman@stoel.com

*Counsel list continues on next page*

Attorneys for Plaintiffs DRAKES BAY OYSTER COMPANY and KEVIN LUNNY

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| **DRAKES BAY OYSTER COMPANY,** 17171 Sir Francis Drake Blvd Inverness, CA 94937, and<br><br>**KEVIN LUNNY**, 17171 Sir Francis Drake Blvd Inverness, CA 94937<br><br>           Plaintiffs,<br><br>     v.<br><br>**KENNETH L. SALAZAR**, in his official capacity as Secretary, U.S. Department of the Interior, 1849 C Street, NW, Washington, D.C., 20240; **U.S. DEPARTMENT OF THE INTERIOR** 1849 C Street, NW, Washington, D.C., 20240; **U.S. NATIONAL PARK  SERVICE** 1849 C Street, NW, Washington, D.C. 20240; and **JONATHAN JARVIS**, in his official capacity as Director, U.S. National Park Service, 1849 C Street, NW, Washington, D.C. 20240.<br><br>           Defendants. | Case No. 12-cv-06134-YGR<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO EXPEDITE RULING AND MOTION FOR INJUNCTION PENDING APPEAL** |

**Counsel List Continued**

John Briscoe [CSBN 53223]
Lawrence S. Bazel [CSBN 114641]
Peter S. Prows [CSBN 257819]
**BRISCOE IVESTER & BAZEL LLP**
155 Sansome Street, Suite 700
San Francisco, CA 94104
Phone: 415.402.2700
Fax: 415.398.5630
E-mail: jbriscoe@briscoelaw.net; lbazel@briscoelaw.net; pprows@briscoelaw.net

Zachary Walton[CSBN 181041]
**SSL LAW FIRM LLP**
575 Market Street, Suite 2700
San Francisco, CA 94105
Phone:  415.243.2685
Email: zack@ssllawfirm.com

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................... 1

II.   BACKGROUND ..................................................................................................... 2

III.  LEGAL STANDARD ............................................................................................. 2

IV.   PLAINTIFFS ARE LIKELY TO PREVAIL ........................................................ 2

A.    THIS COURT HAS JURISDICTION .................................................................. 2

B.    PLAINTIFFS ARE LIKELY TO PREVAIL ON THE MERITS ...................... 5

V.    PLAINTIFFS ARE LIKELY TO SUFFER IRREPARABLE HARM .............. 8

VI.   THE BALANCE OF EQUITIES AND PUBLIC INTEREST FAVORS THE
      INJUNCTION ......................................................................................................... 8

VII.  CONCLUSION ..................................................................................................... 10

**STATEMENT OF THE ISSUES**

1. Whether it is likely that Plaintiffs will succeed on the merits of their appeal to the U.S. Court of Appeals for the Ninth Circuit from the U.S. District Court for the Northern District of California's February 4, 2013, Order, Docket (Dkt.). 89 (henceforth, "Order"), denying Plaintiffs' Motion for a Preliminary Injunction (Dkt. 32).

2. Whether it is likely that Plaintiffs will suffer irreparable harm in the absence of injunctive relief pending resolution of their appeal to the Ninth Circuit.

3. Whether entering an injunction pending appeal is in the public interest.

4. Whether the balance of equities favors an injunction pending appeal.

**RELIEF REQUESTED**

By close of business on February 11, 2013, an injunction pending appeal of the District Court's February 4, 2013, Order denying Plaintiffs' Motion for a Preliminary Injunction, said injunction pending appeal to prevent Defendants from implementing Secretary Salazar's November 29, 2012 Memorandum, the National Parks Service's November 29, 2012 Directive, and the December 4, 2012 Federal Register Notice, and from interfering with the continuing operations of Plaintiffs' oyster farm, pending resolution of Plaintiffs' appeal.

**I.     INTRODUCTION**

Plaintiffs Drakes Bay Oyster Company and Kevin Lunny have appealed from this Court's Order denying their motion for a preliminary injunction. Plaintiffs file the present motion for an injunction pending appeal to comply with FED. R. APP. P. 8(a)(1), which requires such motions "ordinarily" to be made first in the District Court. An expedited injunction pending appeal is necessary to avoid the total destruction of Plaintiffs' livelihood, the jobs of over thirty members of their community, and a crop of nineteen million shellfish in the waters of Drakes Estero.

If this Court is inclined to deny this motion, Plaintiffs respectfully request that it do so by the close of business on February 11, 2013, so that they have sufficient time to bring an emergency motion for a preliminary injunction before the Ninth Circuit. Defendants have told Plaintiffs that Defendants would not object to Plaintiffs moving early in the week of February 11 in the Ninth Circuit for an injunction pending appeal, so long as they first filed their motion for an

-1-   MEMO IN SUPP. OF MOT. FOR INJUNCTION
PENDING APPEAL, 12-CV-06134 YGR

injunction pending appeal in the District Court on the same grounds as Plaintiffs' original motion for a preliminary injunction. Declaration of Peter Prows ("Prows Decl.") ¶ 4. Plaintiffs accordingly file this motion.

## II. BACKGROUND

On December 21, 2012, Plaintiffs moved for a preliminary injunction. Dkt. 32. On January 25, 2013, this Court heard oral argument on that motion. Dkt. 85. On February 4, the Court issued an order denying the motion. Dkt. 89. On February 6, Plaintiffs appealed the denial of their motion. Dkt. 90.

## III. LEGAL STANDARD

Even though Plaintiffs have filed an interlocutory appeal from the District Court's denial of their preliminary injunction motion, this Court retains limited jurisdiction to issue an injunction pending appeal to preserve the status quo. *Nat. Res. Defense Council v. SW Marine, Inc.*, 242 F.3d 1163, 1166 (9th Cir. 2001); *Apple, Inc. v. Samsung Elecs. Co.*, 2012 U.S. Dist. LEXIS 91646, at *14-15 (N.D. Cal. July 2, 2012); *see also* FED. R. CIV. P. 62(c); FED. R. APP. P. 8.

The standard for an injunction pending appeal is the same as for a preliminary injunction. *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008); *see also Leiva-Perez v. Holder*, 640 F.3d 962, 967 (9th Cir. 2011) (for purposes of motion for stay or injunction pending appeal, relevant inquiry is likelihood of success on merits of appeal).

## IV. PLAINTIFFS ARE LIKELY TO PREVAIL

### A. This Court Has Jurisdiction

The Order concluded that the Court lacked jurisdiction because Defendants' decision was "committed to agency discretion by law" under Section 701(a)(2) of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551 *et seq*; Order at 16:6. Plaintiffs respectfully disagree.

The Court concluded that Section 124 "affords complete discretion" and asserted that "Plaintiffs have failed to provide any evidence of Congressional intent to the contrary." Order at

1    19:5-8. But it is not Plaintiffs' burden to show that Section 124 provides for judicial review—

2    quite the contrary. *See Pinnacle Armor, Inc. v. United States*, 648 F.3d 708, 718-19 (9th Cir. 2011

3    (there is a "strong presumption that Congress intends judicial review of administrative action"

4    (internal quotation marks and citation omitted)). Defendants have failed to carry their burden of

5    rebutting the strong presumption of judicial review and thus have failed to demonstrate that this is

6    one of the narrow circumstances where this presumption is overcome. *See id.*

7         The evidence is that Congress enacted Section 124 to authorize Defendants to issue the

8    permit, not to authorize them to deny the permit. Defendants of course needed no new

9    authorization to deny the permit because they had taken the position that they could not issue the

10   permit without violating existing laws. Congress responded by enacting Section 124 to authorize

11   Defendants to issue the permit notwithstanding the laws that Defendants had said prohibited them

12   from issuing the permit. Memorandum, Dkt. 32 at 5:1-18. Defendants do not dispute this reading

13   of the legislative history. Opposition, Dkt. 79 at 17:23-24.

14        Plaintiffs do not dispute that the original bill used the phrase "shall extend the existing

15   authorization" and that this language was changed to "is authorized to issue." Order at 4:25-28.

16   Nor do plaintiffs dispute that this change in language made the decision discretionary. But

17   countless discretionary decisions are reviewed by federal courts each year, including every case

18   in which an Environmental Impact Statement is challenged. If there is no jurisdiction, it cannot be

19   because Congress intended the Secretary's decision to be discretionary: it must instead be that

20   Congress intended the Secretary's discretionary decision to be subject to no standards, or to be

21   otherwise unreviewable by a court.

22        Plaintiffs believe the Court reads too much into the change in language from the draft to

23   the final bill. Section 124 does not say that the Secretary "has complete discretion" or that he

24   "may issue *or deny*" the permit notwithstanding any other provision of law. There is no evidence

25   that Section 124 was intended to do anything other than respond to Defendants' erroneous

26   conclusion that they were not authorized to issue Plaintiffs the permit. *See Scheidler v. NOW,*

27   *Inc.*, 547 U.S. 9, 23 (2006) (the task of statutory construction is to "determine what Congress

28   intended"). Likewise, there is no evidence that Congress intended to insulate a denial of the

-3- MEMO IN SUPP. OF MOT. FOR INJUNCTION
PENDING APPEAL, 12-CV-06134 YGR

1    permit application from judicial review. *See Abbott Labs. v. Gardner*, 387 U.S. 136, 140 (1967)

2    ("judicial review of a final agency action by an aggrieved person will not be cut off unless there is

3    persuasive reason to believe that such was the purpose of Congress").

4    　　　In other words, it does not follow from the grant of discretion that Congress intended to

5    insulate the Secretary from judicial review no matter which way he decided. The plain language

6    of the statute operates in only one direction, because it gave him authority to *issue* the permit

7    notwithstanding any other provision of law.

8    　　　If the Court were to accept Plaintiffs' argument on this point, the Court's other

9    disagreements with Plaintiffs' arguments would fall by the wayside. If the "notwithstanding"

10   language in Section 124 applies only if the Secretary decided to issue the permit, then the usual

11   rules applied to the Secretary's decision to deny the permit. Those usual rules include NEPA

12   requirements and Defendants' regulations, either of which provides more than enough standards

13   to allow for meaningful judicial review. *See Pac. Rivers Council v. U.S. Forest Serv.*, 689 F.3d

14   1012, 1020 (9th Cir. 2012) (judicial review of agency compliance with NEPA available under 5

15   U.S.C. § 706(2)(A)); *Conservancy of Southwest Fla. v. U.S. Fish & Wildlife Serv.*, 677 F.3d 1073,

16   1078 (11th Cir. 2012) ("An agency's failure to follow its own regulations is arbitrary and

17   capricious"); *see also Kola, Inc. v. United States*, 882 F.2d 361, 364 (9th Cir. 1989) (reversing

18   dismissal under § 701(a)(2) because standards provided in agency's regulations "[]bound" its

19   discretion and "provide a basis for judicial review"); *Clipper Cruise Line v. United States*, 855 F.

20   Supp. 1, 3 (D.D.C. 1994) (reviewing NPS decision under 36 C.F.R. § 1.6(d) to deny a permit

21   under the arbitrary and capricious standard of 5 U.S.C. § 706(2)(A); *Ft. Funston Dog Walkers v.*

22   *Babbitt*, 96 F. Supp.2d 1021, 1039-40 (N.D. Cal. 2000) (granting motion for preliminary

23   injunction to remedy NPS's failure to complete formal rulemaking under 36 C.F.R. § 1.5(b)

24   before highly controversial decision to remove off-leash designation for area of Golden Gate

25   National Recreation Area); *United States v. Novak*, 476 F.3d 1041, 1052 (9th Cir. 2007)

26   ("notwithstanding" clause will not displace existing law absent "other convincing indices of

27   statutory intent"); *In re Glacier Bay*, 944 F.2d 577, 581-82 (9th Cir. 1991) (courts look carefully

28   at Congressional intent to see what Congress intended "notwithstanding" language to apply to);

PENDING APPEAL, 12-CV-06134 YGR

*Vill. of Barrington v. Surface Transp. Bd.*, 636 F.3d 650, 662 (D.C. Cir. 2011) ("clear congressional intent to impliedly repeal NEPA only where there was 'a clear and unavoidable conflict' between an agency's organic statute and NEPA, such as statutory deadlines so short that it would be 'inconceivable' for an agency to prepare an" EIS); *Flint Ridge Dev. Co. v. Scenic Rivers Ass'n*, 426 U.S. 776, 788 (1976) (only "where a clear and unavoidable conflict in statutory authority exists, NEPA must give way."); *NRDC v. Winter*, 518 F.3d 658, 685 (9th Cir. 2008) (NEPA regulations require compliance "unless existing law … expressly prohibits or makes compliance impossible" (citing 40 C.F.R. § 1500.6)), overruled in part on other grounds, 129 S. Ct. 365 (2008).

The Court cites to Plaintiffs' own letters to support the concept that "Section 124 provided the Secretary with discretion." Order at 20:3-9. But, once again, the issue is not whether the Secretary had discretion, but rather whether he had *absolute* discretion, i.e. whether Congress intended the phrase "notwithstanding any other provision of law" to apply to a denial of the permit, and thereby to insulate a denial from judicial review. The two letters cited by the Court both assert that the Secretary can *issue* the permit without complying with NEPA. That position is consistent with the position taken by Plaintiffs in this Court: that the Secretary can *issue* the permit notwithstanding any other provision of law—just as Section 124 provides—but that the Secretary is not authorized to *deny* the permit without complying with law.

### B. Plaintiffs Are Likely To Prevail On The Merits

The Order also concluded that Plaintiffs were not likely to prevail on the merits. But Plaintiffs are likely to prevail on the merits for at least three reasons (which are the same reasons Plaintiffs gave in their preliminary injunction motion).

First, Defendants' decision was based on four errors of law, and that decision thus must be set aside. *See SEC v. Chenery Corp.*, 318 U.S. 80, 93-94 (1943) (agency action "may not stand if the agency has misconceived the law"). Defendants erred when they concluded that issuing Plaintiffs a permit would "violate" the law, because Section 124 provided that Defendants were authorized to issue the permit notwithstanding any other provision of law. *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (agency action "would be

arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider"). Defendants also erred when they concluded that Congress in the 1976 Act evinced an intent to convert Drakes Estero to wilderness now; in fact, Congress agreed with Defendants' position at the time that as long as California retains the fishing and mineral rights to Drakes Estero, the area is "inconsistent" with wilderness. Dkt. 32 at 4:1-3. Defendants further erred when they concluded that Congress did not authorize mariculture in the estero. And Defendants erred when they concluded that Section 124 exempted them from complying with NEPA and other laws for their decision to deny Plaintiffs a permit to continue operating.[1]

Second, Defendants violated NEPA. Defendants did not file the FEIS with EPA, as required by 40 C.F.R. § 1506.9. Because of this failure, EPA never published a notice of availability for the FEIS. NEPA regulations also specify that "[n]o decision on the proposed action shall be made" until 30 days after the publication of the notice of availability. 40 C.F.R. § 1506.10(b)(2). By making their decision before this date, Defendants violated NEPA.

Likewise, Secretary Salazar did not issue a NEPA-compliant record of decision (ROD), as required by 40 C.F.R. § 1505.2. By making their decision before this date and without a NEPA-compliant ROD, Defendants violated NEPA. *See, e.g., County of Del Norte v. U.S.*, 1983 U.S. Dist. LEXIS 19296, 9-11 (N.D. Cal. 1983).

Defendants also violated NEPA by relying on invalid data and scientific misconduct. NEPA requires agencies to take a "hard look" that "must be taken objectively and in good faith, not as an exercise in form over substance, and not as a subterfuge designed to rationalize a decision already made." *W. Watersheds Project v. Kraayenbrink*, 632 F.3d 472, 491 (9th Cir. 2011). "'Accurate scientific analysis, expert agency comments, and public scrutiny are essential to implementing NEPA.'" *Id*. (quoting 40 C.F.R. § 1500.1(b)). NEPA's purpose is "to ensure

---

[1] The conclusion that NEPA applies is confirmed by the fact that Congress not only gave the Secretary several years to make his decision but, after Defendants announced their then-interpretation of Section 124 to require compliance with NEPA, 75 Fed. Reg. 65,373 (Oct. 22, 2010), ratified that interpretation by passing legislation specifically requiring the National Academy of Sciences to assess the scientific validity of the draft environmental impact statement, Conference Report, Consolidated Appropriations Act, 2012 (Dec. 2012), Pub. L. No. 112-74. *See, e.g., FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 155-56 (2000) (congressional legislation effectively ratified agency's interpretation of statute).

informed decision making to the end that the agency will not act on incomplete information, only to regret its decision after it is too late to correct." *Ctr. for Biological Diversity v. U.S. Forest Serv.*, 349 F.3d 1157, 1166 (9th Cir. 2003) (internal quotations and citations omitted). It requires "that an agency has 'consider[ed] every significant aspect of the environmental impact of a proposed action' and has 'inform[ed] the public that it has indeed considered environmental concerns in its decisionmaking process.'" *Alcoa, Inc. v. Bonneville Power Admin.*, 698 F.3d 774, 795 (9th Cir. 2012) (quoting *Baltimore Gas & Elec. Co. v. Natural Res. Def. Council, Inc.*, 462 U.S. 87, 97 (1983)). Here at least one essential element was missing: the scientific analysis was not accurate. Defendants have been repeatedly and justifiably criticized for basing their decision on bias, making false statements, and exaggerating the evidence, in violation of NEPA.

Third, Defendants did not comply with their own regulations in reaching their decision. Defendants' regulations require that the denial of a permit be based on a finding of adverse impact to specified factors. 36 C.F.R. § 1.6(d)). Among those factors is "policies." *Id.*, para. (a). The "policy" Defendants cited in reaching their decision was one of Congressional intent—that Congress in the 1976 Act intended Plaintiffs' oyster farm to be shut down because it is "the only use preventing the conversion of Drakes Estero to full wilderness". Order at 22:18-23:2. But Congress in the 1976 Act intended merely that Drakes Estero should be converted to wilderness only when California conveyed its retained rights back to the U.S. government; Congress did not intend that the oyster farm's operations should be terminated before then.

Defendants also did not comply with their own regulations when they illegally published a false notice in the Federal Register purporting to change Drakes Estero to "designated wilderness." This Federal Register Notice was false in two ways. *See Natural Res. Def. Council v. U.S. Forest Service*, 421 F.3d 797, 806 (9th Cir. 2005) (an "explanation that runs counter to the evidence" is an abuse of discretion) (internal quotation and citation omitted). The first false statement is that "all uses prohibited under the Wilderness Act within Drakes Estero have ceased as of 11:59 p.m. on November 30, 2012." 77 Fed. Reg. at 71827. This statement is false because not all uses that Defendants assert are prohibited by the Wilderness Act ceased on November 30.

1  Commercial activities continue (as specifically authorized by Defendants) including planting spat
2  in the waters of the estero, and processing and selling oysters.

3  The second false statement is that "Drakes Estero is entirely in federal ownership." 77
4  Fed. Reg. at 71827. This statement is also false because California still retains the fishing rights in
5  Drakes Estero—the same rights that Defendants told Congress prohibited the area from *ever*
6  being converted to full wilderness.

7  The Federal Register Notice is also illegal under Defendants' regulations. Those
8  regulations require that any "closure, designation, use or activity restriction or condition" that
9  significantly changes a park's public uses, or that is "highly controversial," "shall be published as
10 rulemaking in the Federal Register." 36 C.F.R. § 1.5(b). This regulation applies here because the
11 notice was the result of Defendants' highly controversial decision to change the designation of
12 Drakes Estero to wilderness and thereby restrict its uses. The failure to complete a formal
13 rulemaking process before publishing the notice violates the law and is grounds to issue an
14 injunction and vacate the notice. *See Ft. Funston Dog Walkers v. Babbitt*, 96 F. Supp. 2d 1021,
15 1040 (N.D. Cal. 2000) (granting motion for preliminary injunction to remedy NPS's failure to
16 complete formal rulemaking before highly controversial decision to remove off-leash designation
17 for area of Golden Gate National Recreation Area).

18 **V.     PLAINTIFFS ARE LIKELY TO SUFFER IRREPARABLE HARM**

19 As the Order found, Plaintiffs are likely to suffer irreparable harm if an injunction is not
20 granted. Order at 27:24-25.

21 **VI.    THE BALANCE OF EQUITIES AND PUBLIC INTEREST FAVORS THE**
22 **INJUNCTION**

23 The balance of equities favors Plaintiffs because Defendants will not be harmed by
24 following the law and maintaining the status quo—which has existed for approximately eighty
25 years in Drakes Estero—but implementing Defendants' decision will destroy Plaintiffs' business
26 and community.

27 It is also in the public interest to preserve the status quo during the pendency of Plaintiffs'
28 suit. First, the public interest will be served by avoiding the immediate loss of thirty-one full-time

jobs, the eviction of fifteen people from their homes, and educational impairment of the twelve children of DBOC's employees and their classmates.

Second, compliance with NEPA and other environmental law is in the public interest. *See Park Village Apartment Tenants Ass'n v. Mortimer Howard Trust*, 636 F.3d 1150, 1160 (9th Cir. 2011) (compliance with the law is in the public interest). NEPA represents Congress's determination that the public interest requires careful, procedurally rigorous consideration of the environmental impacts of agency decisions. And the 2011 congressional directive to NAS to review the DEIS, see Conference Report, Consolidated Appropriations Act, 2012 (Dec. 2011), Pub. L. No. 112-74, reflects Congress's conclusion that the public interest requires that NEPA procedures must be complied with before the Secretary could lawfully deny Plaintiffs' SUP application. The National Aquaculture Act also declares that it is in the public interest to encourage the development of aquaculture in the United States. *See* 16 U.S.C. § 2801(c). And the 1978 PRNS Act declares Congress's intent that aquaculture should be permitted to continue indefinitely in Drakes Estero. The public interest in ensuring compliance with federal law also weighs in favor of an injunction. *See Small v. Avanti Health Sys.*, LLC, 661 F.3d 1180, 1197 (9th Cir. 2011).

Third, implementing Defendants' orders will also harm the environment and damage the ecosystem, adversely affecting fish, birds, marine mammals, and the public.

Fourth, it is in the public interest to avoid removing a local landmark and a model for sustainable agriculture working in harmony with the environment, terminating one-third of California's oyster production and last remaining oyster cannery, eliminating the only remaining source of oyster shell for habitat restoration in California, and depriving the public of having its government make decisions based on quality science, rather than misrepresentations.

The Order concluded that the balance of the equities and public interest did not support issuance of the injunction primarily because Congress in the 1976 Act intended that Defendants should work to "steadily remove" the oyster farm in order to convert the estero to wilderness. Order at 30:7-8. Plaintiffs respectfully disagree. Congress did not intend that the estero could convert to wilderness until California conveys its retained rights that Defendants said are

-9-   MEMO IN SUPP. OF MOT. FOR INJUNCTION
PENDING APPEAL, 12-CV-06134 YGR

"inconsistent" with wilderness back to the federal government. Until then, Congress intended that the oyster farm could remain in operation.

Thus the balance of the equities and the public interest favor allowing the oyster farm to continue operating.

## VII.  CONCLUSION

Plaintiffs' motion for an expedited ruling, and for an injunction pending appeal of the February 4, 2013 Order, should be granted.

DATED: February 7, 2013

Respectfully submitted,

CAUSE OF ACTION

By:  /s/ Amber Abbasi
　　　AMBER ABBASI
　　　Attorneys for Plaintiffs

DATED:  February 7, 2013

BRISCOE IVESTER & BAZEL LLP

By:  /s/ Peter Prows
　　　PETER PROWS
　　　Attorneys for Plaintiffs